Patch *et ux. v.* Keeler et al.

NATHAN W. PATCH AND JANE M. PATCH, HIS WIFE, *v.* ELIJAH KEELER AND EBENEZER N. BRIGGS.

*Parol testimony in aid of a general description of premises in a report of commissioners. Ejectment. Possession.*

When in a written description of a piece of land an uncertainty arises, not from the terms used, but from their application to, or the nature or situation of the subject matter, oral evidence is admissible in explanation of it.

Parol testimony is admissible to show the existence of monuments from and to which commissioners surveyed in setting out a widow's dower, where they have given only a general description of the premises in their return, as, in this instance, "three rows of apple trees on the west side of the orchard."

Considerations involved, and rules to be applied, in determining the eastern line of of premises set out with only the general description of "three rows of apple trees on the west side of the orchard, running north and south in the centre between the third and fourth rows."

One of the defendants having received a deed of the premises east of the three rows of apple trees in question, which was given and held by him only as a mortgage, claimed that his grantor was entitled to hold one of the rows, which he was in possession of as not embraced in, but which the jury found was included in the dower. *Held*, that his claim, in this respect, rendered him liable, equally with his grantor, to an action of ejectment brought for the recovery of the dower premises.

EJECTMENT. The plaintiffs claimed title to the premises in question, as owners of the reversion of that portion of the dower set out to Mary Wood, the widow of Elijah Wood, which were described in the report of the commissioners as follows, " also three rows of apple trees on the west side of the orchard, running north and south in the centre between the third and fourth rows," the said Mary Wood having deceased. The premises claimed to be covered by the above description were described in the declaration by definite courses and distances. The defendants plead the general issue; trial by jury, September Term, 1855,—PIERPOINT, J., presiding.

After introducing copies of the probate records, showing the setting out of a portion of the dower, under the above description, and a division of the reversion, in which said portion was assigned to the plaintiff, Jane M. Patch, and copies of deeds showing the title of the defendants to adjoining premises, and their claim to those in dispute, the plaintiffs, for the purpose of showing that the premises described in the declaration were the same that were set out as a part of Mrs. Wood's dower, as " three rows of apple trees in

the west part of the orchard," offered testimony tending to show that the commissioners, in setting out the dower, begun and made a monument at a point described and indicated on a plan of the premises, and run from thence on a certain course specified to another point indicated on the plan, and there made a monument on the premises, which was still apparent, to the admission of which the defendants objected, but the court admitted it. It appeared from the testimony introduced in connection with the plan, upon which the situation of all the apple trees was designated, that west of what the plaintiff claimed to be the three rows, there was another row, which the defendants claimed was one of the three rows, consisting of two trees in the orchard and of two more trees in the same line with them, but the last mentioned trees were separated by a fence from all the others, and stood upon land used for a pasture,—the other land being used for meadow and plowing,—and this distinction in the uses made of the different lots existed at the time of setting out Mrs. Wood's dower; but the testimony of the defendants tended to show that Mrs. Wood, during her life, treated this as the west row, and claimed only this one and the two next east. The plaintiffs showed that the defendant Keeler was in possession of the premises, but no possession of the defendant Briggs was shown, or that he claimed any title to the premises, except that he received from the defendant Keeler the deed hereafter mentioned, and caused it to be recorded. This deed was an absolute quit-claim to him of the same land deeded by one Lawrence to Keeler, on the 11th March, 1841, but contained no further description. The deed from Lawrence to Keeler conveyed, by definite bounds, a piece of land embracing the land in question, except that it contained the following reservation, "reserving from the premises above described three west rows of apple trees in the orchard, two stables in the S. W. corner of the barn, and twelve feet square over the stable to put hay on, for the benefit of Mary Wood." The defendant Briggs introduced testimony tending to show that his deed was given to and received and held by him only as a mortgage, and that he claimed no title to any portion of the premises set out to Mrs. Wood as her dower, the same being excepted in the deed from Lawrence to Keeler, to which his deed referred.

In reference to the several questions presented, the court charged the jury that the plaintiffs were entitled to recover the first three rows of apple trees on the west side of the orchard, and that it was a question for the jury to determine which were the first three 'rows of apple trees in the orchard, described in the commissioners' report, from what they should find was called and considered to be the orchard, at the time the commissioners set out the dower; that it was for the jury to determine how the east line should be run, except that it should be established centrally between the third and fourth rows; that the defendant Briggs was liable in this action, by receiving the deed from Keeler, if they found the east line as claimed by the plaintiffs, as Briggs, on the trial, had claimed that the dower did not extend as far east as that line.

Under these instructions the jury returned a verdict against both defendants, describing in their verdict, by bounds, the premises which they found the plaintiffs were entitled to recover,—which, upon the east, was a straight line running north and south between what the plaintiffs claimed were the third and fourth rows in the orchard. To the admission of the testimony objected to, and to the charge of the court, the defendants excepted.

Other premises were described in the declaration and included in the verdict, but no question of law being reserved in reference to them, any further allusion to them is deemed unnecessary.

*E. N. Briggs* for the defendants.

*A. A. Nicholson* for the plaintiffs.

The opinion of the court was delivered by

REDFIELD, CH. J. This is an action of ejectment to recover the same land set off as dower to Mary Wood, in the estate of her husband. The description in the declaration includes what the defendants claimed was the second, third and fourth rows of apple trees, whereas the dower set off was "the three rows of apple trees on the west side of the orchard." There being two trees in a row west of those claimed by the plaintiffs, in the orchard lot, and two more in the same row, but in a pasture lot, the plaintiffs claimed that those four trees were not to be regarded as one of the rows referred to.

The first question made in the case is, whether evidence can be given of the survey made, and monuments erected, by the commissioners setting off the dower. It is evident that the uncertainty arises from the state of the subject matter, and not from the terms used in setting out the dower. And it being a latent ambiguity, it may commonly be explained by oral evidence. As it arose from nature of the subject matter, oral evidence is admissible always to ascertain that subject matter. The mere description of three west rows of apple trees is definite, and no uncertainty arises from the terms used, but altogether from the application of the terms to the thing set out. The cardinal object in the construction and application of all instruments being to reach the very thing intended, nothing could be more satisfactory than to find the subject matter of doubt in the application defined and determined by the commissioners themselves. This is in strict accordance with the course of evidence in the application of deeds and other instruments to their subject matter. Where monuments exist, corresponding with the sense of the terms used in a description of land, they will ordinarily govern. The monuments proved in the present case to have been erected by the commissioners, at the time they set out the dower, if established, would be more satisfactory than any merely abstract reasoning on the subject. And these monuments, like all monuments upon land, can only be shown by parol evidence. The law having no fixed definition of what is a row of apple trees, or what is an orchard, the import of the terms "three west rows of apple trees in the orchard," becomes altogether matter of fact for the jury. One tree may not be a row; two trees may be. But where the rows mostly consist of eight, ten, and more trees, it would hardly be expected the commissioners would have regarded two trees as a row, especially where the rest of the row was not in the orchard, of trees in the orchard; but this is all matter of fact. It is impossible to lay down any rule of law upon the subject. But when we come to find monuments, erected by the commissioners, in a line cutting off three full rows, we find no difficulty in saying these monuments are to govern, and so the line run by the jury defines the boundary. The showing of the proceedings of the commissioners, in setting out the dower, is nothing more or different from showing the survey of a lot of land, when it was run out and set off from another lot or township.

So, too, it was matter of fact, what was the orchard at the time the dower was set off. The law does not define an orchard, and, if it did, it could not determine the extent of this particular orchard. As those three rows of apple trees were to be from the orchard, it must be matter of fact for the jury to determine what was then the orchard, and we do not see how the judge could have given the jury much light upon that point. The rule laid down to the jury, in regard to the other boundaries, that they should be far enough from the trees to include land sufficient for the enjoyment of the trees, is possibly liable to the objection of indefiniteness. But, so are the terms used; and it is the duty of the court and jury to give them a sensible and reasonable application to the subject matter. The rule claimed by the defendants, of half the width between the rows, would be more straight, perhaps, than would consist with comfort and convenience always. And it should not, perhaps, ordinarily extend beyond the amount of ground covered by the trees, or which might be expected to be covered by the probable growth of the trees. And still, as the land may be fairly presumed to have been intended to be included by straight lines, and in a shape approaching rectangular form, it would naturally, at some points, extend further from the trees than at others. The jury seem to have considered all these matters, and, judging from the plan, which is said to define the objects upon the land accurately, we do not see any reason to open the case because all these considerations were not enumerated by the charge. It may probably be treated as in some sense matter of law, when all the facts are put upon paper, as the objects are upon this plan, how the land is to be defined. And it seems to the court that the jury have defined this land, in their verdict, in a manner of which the defendants have no cause to complain. We do not see how any less land could have been taken and include the three rows of trees set out by the commissioners, without adopting some unusual and extraordinary shape. The east line was left to the jury, but this the very report of the commissioners defined as equi-distant from either row of trees, and, of course, it was to be a straight line. We do not see how any question can fairly be made in regard to this line. The jury were told it must be equi-distant from the rows, but not that it should be a straight line. If they had presumed to adopt a curve or zigzag line, as possibly they might have done, under

Patch *et ux. v.* Keeler et al.

the charge, there would have been some difficulty possibly. But this is not left in uncertainty, as the verdict defines it as a straight line.

The charge of the court in regard to the liability of the defendant Briggs, might have been differently expressed, but we do not see how any question can be made in this case, but that if this defendant was in possession of any portion of this farm, he was of this portion, or a part of it, which was recovered by the plaintiffs. Not to spend time upon the exception in the deed to Briggs, which is found by referring to the deed of his grantor only, and which is so expressed as to show that the parties understood the exception probably as terminating with the life of the widow, as the reservation, or exception, is only for her benefit; but, allowing that this exception is as definite as the description in the commissioners' report, which it obviously is not, there was still a controversy as to one of the rows of apple trees, and the defendant Keeler certainly claimed one of the rows, as not included in the exception at all, and so attempted to hold it, as part of the land confessedly deeded to the defendant Briggs. And Keeler's possession, after the deed, is Briggs' possession, unless something arises in the case to show that this possession in Keeler is exclusively on his own account, and without the concurrence of the grantee, nothing of which appears in the present case, but the contrary. We think the claim of Briggs, in regard to Keeler's right to hold this row of trees, might fairly be regarded as a construction of the exception in his own deed from Keeler, as the court decided. Mr. Briggs was not only counsel for Keeler, but for himself also, and we do not think that when he claims possession of one of the rows of apple trees, as not included in the exception, he can fairly refer this exclusively to Keeler, since it does and must enure to his own benefit if it prevails.

Judgment affirmed.